~~SEALED~~ 

FILED
AUG 1 6 2017
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAVIER FELIX-BAYARDO (1)<br>█████████████████ (2)<br>GABRIELA FAVELA NUNEZ (3)<br>MARIO NORIEGA-OSUNA (4)<br>MANUEL FELIX-GUTIERREZ (5)<br>HECTOR SANDOVAL-TOLOZA (6)<br>█████████████████ (7)<br><br>Defendants. | Case No.: 17MJ2897<br><br>COMPLAINT FOR VIOLATION OF<br><br>Title 18 U.S.C. § 1956(h) – Conspiracy to Launder Monetary Instruments<br><br>Title 21 U.S.C. § 846 – Conspiracy to Distribute Cocaine, Methamphetamine, and Marijuana |

The undersigned complainant being duly sworn states:

### Count 1: Conspiracy to Launder Monetary Instruments

Beginning on or about October 1, 2015 and continuing to on or about August 15, 2017, in the Southern District of California, defendants JAVIER FELIX-BAYARDO, █████████████████████████ GABRIELA FAVELA NUNEZ, and MARIO NORIEGA-OSUNA did knowingly combine, conspire, and agree with each other and with other persons known and unknown to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to wit:

    (a)    to knowingly conduct financial transactions affecting interstate commerce

and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, conspiracy to distribute cocaine, methamphetamine, and marijuana in violation of Title 21, United States Code, Section 846, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

Count 2: Conspiracy to Distribute Cocaine, Methamphetamine, and Marijuana

Beginning on or about October 1, 2015 and continuing to on or about August 15, 2017, in the Southern District of California, defendants JAVIER FELIX-BAYARDO, MANUEL FELIX-GUTIERREZ, HECTOR SANDOVAL-TOLOZA, ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ did knowingly and intentionally combine, conspire, and agree together and with each other, and with other persons known and unknown, to distribute 5 kilograms and more of a mixture and substance containing a detectable amount of cocaine and 500 grams and more of a mixture and substance containing a detectable amount of methamphetamine, both Schedule II controlled substances, and 100 kilograms and more of a mixture and substance containing a detectable amount of marijuana, a Schedule I controlled substance, in violation of Title 21 United States Code, Section 841(a)(1).

All in violation of Title 21, United States Code, Section 846.

And the complainant states that this complaint is based on the attached affidavit,

which is incorporated herein by reference.

Paul Geering
Special Agent
Internal Revenue Service - Criminal Investigations

Sworn to before me and subscribed in my presence, this _16_th day of August, 2017.

HON. NITA L. STORMES
United States Magistrate Judge

## AFFIDAVIT IN SUPPORT OF COMPLAINT AND APPLICATIONS FOR SEARCH WARRANTS AND SEIZURE WARRANTS

I, Paul Geering, Special Agent, Internal Revenue Service - Criminal Investigation, being duly sworn, hereby state:

### A. Training and Experience

I am a Special Agent of the Internal Revenue Service, Criminal Investigation, assigned to the San Diego, California post of duty, and have been a special agent for twenty-one years. I am a graduate of San Diego State University where I received a Bachelor of Science degree in Criminal Justice Administration. Additionally, I graduated from the Federal Law Enforcement Training Center where I received training in, among other things, areas such as investigation techniques, tax law, criminal tax violations, money laundering violations, and familiarization with controlled substances. During my employment with the Internal Revenue Service, Criminal Investigation, I have conducted and participated in criminal investigations of individuals and businesses who have violated federal laws, particularly those found in Title 18, Title 21, Title 26, and Title 31 of the United States Code. I have also participated in the execution of search and seizure warrants on private residences, businesses, professional offices, safe deposit boxes, bank accounts and vehicles.

By virtue of my employment as a Special Agent, I have performed various tasks, which include, but are not limited to:

1. Functioning as a surveillance agent and thereby observing and recording movements of persons trafficking in illegal drugs and weapons and laundering money;

2. Functioning as an undercover agent;

3. Functioning as a case agent, which involves the supervision of specific investigations involving drug traffickers and money launderers;

4. Participating in the tracing of monies and assets gained by drug traffickers from illegal sale of drugs; and

5. Interviewing witnesses and informants relative to the illegal trafficking of drugs and distribution of monies and assets derived from the illegal trafficking of drugs.

Based on my experience, I am also familiar with the methods utilized in drug trafficking operations. This investigation has been conducted in cooperation with the Drug Enforcement Administration and Homeland Security Investigations, and I have spoken and coordinated with those agencies about the facts herein.

### B. Purpose of This Affidavit

I submit this affidavit in support of the following:

1. A complaint for violations of 18 U.S.C. § 1956(h) and 21 U.S.C. § 846

2. Applications for the issuance of warrants, pursuant to Rule 41 of the Federal Rules of Criminal Procedure, to search the following locations, more fully described in Attachments A-1, A-2, and A-3, incorporated herein by reference:

A-1. 3761 Royal Place, Bonita, CA 91902 ("TARGET RESIDENCE")

A-2. An outbuilding "bathhouse" located on Assessor Parcel Number 404-430-46-00 in Alpine, CA 91901 ("TARGET BATHHOUSE")

A-3. A private commercial mailbox located at Mail Services Plus, 1626-G Sweetwater Road, #241, National City, CA 91950 ("TARGET MAILBOX")

The purpose of the search warrants is to seize property, more fully described in Attachment B-1, B-2, and B3, incorporated herein by reference. As to the property described in Attachment A-1, the purpose of the search warrant is also to locate persons to be arrested, namely Javier FELIX-Bayardo and Gabriela Favela NUNEZ.

3. Applications for the issuance of seizure warrants for Bank of America account #325068416272 ("BOA ACCOUNT") and Mission Federal Credit Union account #91354938 ("MFCU ACCOUNT"), which contain forfeitable funds pursuant to 18 U.S.C. § 982(a) and 21 U.S.C. §§ 853(a) and 881(a)(6).

The following is based on my knowledge of the facts alleged in this affidavit arising from my training, experience, personal observations, review of records and documents obtained during this investigation, witness interviews, and consultation

with other law enforcement officers. For example, information resulting from surveillance does not necessarily set forth my own observations, but rather may have been provided directly or indirectly by other law enforcement officers who conducted such surveillance. Since this affidavit is for a limited purpose, I have not included every fact I know about this investigation. I set forth only facts necessary to establish probable cause for the requested complaint and warrants. Dates and times are approximate.

### C.  Investigative Background

In October 2015, I learned of suspicious activity occurring in bank accounts associated with a banking customer who had provided the address of 2330 Grove Ave. # 14, San Diego, CA 92154, when opening the accounts. On January 29, 2016, I conducted surveillance at that location and observed a Hispanic male depart in a black Honda Ridgeline (CA 21223U1). I followed the Ridgeline to another residence located at 594 Race Point Ct., Chula Vista, CA 91911, and observed numerous other vehicles parked around that residence, including a red Ford F-150 truck (CA 57341W1) registered to Gabriela F. NUNEZ. Agents then conducted Financial Crimes Enforcement Network ("FinCEN") queries for any accounts associated with those two residence addresses, as well as any accounts associated with the names and/or addresses of the registered owners of the vehicles observed during surveillance.

As additional associated accounts were located, agents expanded the queries to include any accounts with matching account holder names, addresses, phone numbers, e-mail addresses, etc. Subpoenas for the records for these accounts revealed that over 50 of these accounts were being used as "funnel accounts," that is, accounts used to receive cash deposits up to $10,000 from locations distant from San Diego, which were then quickly withdrawn in the San Diego area. Based on my training and experience, I know that this is a common practice used among drug traffickers to transmit drug proceeds from distributors throughout the United States back to San Diego and other border cities. The currency, once withdrawn in San Diego, can then be smuggled in bulk into Mexico to the drug suppliers, thereby avoiding the scrutiny that large cash expenditures generate in the United States. In aggregate, the funnel accounts identified

as being associated with this particular conspiracy due to their common personal identifying information have been used to transmit over $5 million.

On March 3, 2016, San Diego County Sheriff's deputies stopped the Ridgeline near 1750 Oro Vista Road, San Diego. The driver and sole occupant was identified as William QUINTERO. QUINTERO consented to a search of the Ridgeline, which yielded a white box containing $21,000 in currency. A subsequent search of the residence of QUINTERO and his wife, Arami, at 2330 Grove Ave. yielded an additional $40,550 in currency and 2317.5 pounds of marijuana. On March 4, 2016, officers executed a search warrant at Hilltop Main Self-Storage, 3755 Main Street, Chula Vista, CA, Unit G005, which was rented to William QUINTERO. The storage unit contained an additional 3619.7 pounds of marijuana. William and Arami QUINTERO both subsequently pled guilty to Title 21 offenses in Southern District of California Case Number 16CR0691-BAS.

Incident to William QUINTERO's arrest, agents seized his cellular phone and obtained a warrant to search it. During a search of the phone, agents found data that aided in the identification of Javier FELIX-Bayardo and Mario NORIEGA-Osuna as criminal associates of William QUINTERO. FELIX-Bayardo is married to NUNEZ, the registered owner of the red Ford F-150 that was previously observed outside 594 Race Point Ct., an address associated with multiple funnel accounts.

### D. Money Laundering Activity

As mentioned above, agents identified a set of accounts at Bank of America and Wells Fargo that shared common account identifiers, such as the owner's name, mailing address, phone number, and/or email address. Agents subpoenaed records for each of these accounts, including bank statements as well as the documentation of the opening of the accounts. Agents discovered that FELIX-Bayardo, ▮▮▮▮▮ and NORIEGA-Osuna controlled many of these accounts, either in their own names or under aliases.[1] When opening accounts under aliases, FELIX-Bayardo, ▮▮▮▮▮ and NORIEGA-Osuna often presented an identification document purportedly issued

---

[1] Prior to their arrests in April 2016, William and Arami QUINTERO also controlled multiple funnel accounts.

by the Mexican government that contained a photo of FELIX-Bayardo, ▮▮▮ or NORIEGA-Osuna, but another person's name. In other instances, agents reviewed bank or ATM surveillance footage showing FELIX-Bayardo or NORIEGA-Osuna making withdrawals from the alias accounts. Based on that information, the following charts set forth the accounts believed to be opened and controlled by FELIX-Bayardo, ▮▮▮ and NORIEGA-Osuna, respectively:

| Account Name | Account | Statement Date Range | Cash Deposit Amount |
|---|---|---|---|
| Javier Felix-Bayardo | BOA #2275<br>WFB #8371 | 1/13/14 – 6/18/14<br>9/8/15 – 1/21/16 | $75,290<br>$103,045 |
| Saul Barragan-Soto | BOA #4440<br>WFB #2123 | 1/13/16 – 1/12/17<br>12/30/15 – 1/24/17 | $114,155<br>$214,786 |
| Javier Felix-Loya | BOA #4789<br>WFB #3144 | 4/6/16 – 1/25/17<br>2/1/16 – 6/13/16 | $125,479<br>$59,751 |
| Javier Lopez-Perez | BOA #2070<br>WFB #0247 | 3/5/15 – 8/17/15<br>3/5/15 – 11/24/15 | $120,620<br>$108,400 |
| Alfredo Pina-Gil | BOA #2397<br>WFB #1198 | 1/22/15 – 7/20/15<br>1/20/15 – 3/10/16 | $232,460<br>$364,040 |
| Jesus Guerra-Lopez | BOA #7093 | 8/24/15 – 1/4/16 | $138,892 |
| Manuel Gomez-Acosta | BOA #6272<br>WFB #7768 | 12/28/15 – 5/19/17<br>12/30/15 – 2/28/17 | $89,760<br>$127,532 |
| Cesar Rangel | WFB #2168 | 8/12/15 – 1/26/16 | $162,639 |
| Raul Bustamante-Nieto | BOA #5875<br>WFB #6804 | 8/14/14 – 12/18/15<br>8/18/14 – 3/16/16 | $223,040<br>$367,526 |
| **FELIX-Bayardo Total** | | | **$2,627,415** |



| Account Name | Account | Statement Date Range | Cash Deposit Amount |
|---|---|---|---|
| Mario Noriega | WFB #5429<br>WFB #9042 | 2/18/14 – 7/30/14<br>12/7/15 – 1/30/14 | $123,750<br>$7,000 |

| Mario Osuna-Felix | WFB #8998 | 6/27/16 – 2/27/17 | $47,359 |
|---|---|---|---|
| Martin Gonzales-Cota | BOA #0613<br>WFB #2115 | 12/30/15 – 12/7/16<br>12/30/15 – 3/2/16 | $40,250<br>$46,951 |
| Jose Lara-Osuna | WFB #7082 | 2/5/16 – 3/2/16 | $17,500 |
| Julio Prado-Cruz | BOA #0906<br>WFB #6195 | 12/31/15 – 4/25/16<br>12/31/15 – 3/3/16 | $45,460<br>$37,000 |
| Pedro Loya-Osuna | WFB #2680 | 8/11/15 – 4/1/16 | $100,410 |
| Pedro Iribe-Cota | WFB #2314 | 8/10/16 – 1/31/17 | $36,050 |
| Manuel Felix-Lara | BOA #1776<br>WFB #1625<br>WFB #3515 | 9/8/15 – 1/5/16<br>9/8/15 – 12/9/15<br>12/9/15 – 3/3/16 | $70,522<br>$59,450<br>$25,300 |
| Ivan Noriega-Bayardo | WFB #4835 | 7/20/16 – 9/22/16 | $36,900 |
| Ricardo Sandoval-Picos | BOA #2617<br>WFB #6687 | 12/11/15 – 4/25/16<br>10/14/15 – 3/2/16 | $52,875<br>$66,330 |
| Jose Toloza-Nieto | BOA #6088<br>WFB #3420 | 8/27/15 – 12/14/15<br>8/27/15 – 12/14/15 | $76,622<br>$100,150 |
| Daniel Ortega-Cruz | WFB #1800 | 4/5/16 – 12/29/16 | $72,025 |
| Miguel Sandoval-Osuna | WFB #7857 | 4/5/16 – 1/13/17 | $69,202 |
| Luis Lopez-Torres | WFB #3919 | 1/15/15 – 10/8/15 | $126,600 |
| Luis Castro-Cruz | WFB #4429 | 8/10/16 – 1/30/17 | $43,090 |
| Victor Perez-Loya | WFB #5585 | 8/16/16 – 2/16/17 | $42,687 |
| **NORIEGA-Osuna Total** | | | **$1,343,483** |

When several of the above funnel accounts associated with Javier FELIX-Bayardo were opened, the customer provided a mailing address corresponding to the TARGET MAILBOX. I obtained rental records for the TARGET MAILBOX, which show that it was rented to "Jesus Valenzuela" from August 2014 to the present. In addition, listed as authorized users of the mailbox were several additional names, including "Raul Bustamante," "Jesus Guerra," and Luis Lopez Torres." Both "Raul Bustamante" and "Jesus Guerra" are aliases of FELIX-Bayardo used to open funnel accounts, as listed above, and "Luis Lopez Torres" is an alias of NORIEGA-Osuna used to open a funnel account. These names were later crossed off, and new names were listed, including

- 6 -

"Alfredo Pina-Gil." This is another FELIX-Bayardo bank account alias. I therefore believe that FELIX-Bayardo and his co-conspirators have used the TARGET MAILBOX to receive mail related to their various funnel accounts, and have updated the named users of the TARGET MAILBOX as certain funnel accounts are closed and new ones are opened.

In addition, agents identified other funnel accounts with common identifiers that belonged to other real individuals. One such co-conspirator was Margarito RODRIGUEZ-Ochoa. On June 23, 2016, agents conducted a Mirandized interview of RODRIGUEZ-Ochoa, wherein he admitted that he had two bank accounts, one at Bank of America and one at Wells Fargo, and that deposits between $3000 and $7000 were made into his accounts from unknown persons on the east coast and he then withdrew the currency and delivered it to "William Gordo" or "Cejas."[2] RODRIGUEZ-Ochoa admitted that he had been operating funnel accounts for about a year and receiving cash deposits about twice a month, and that he was paid $50 for every $1000 in deposits. RODRIGUEZ-Ochoa admitted that he received statements and other mail from banks for his own and other individuals' accounts, and that he handed all of the paperwork to "Cejas." RODRIGUEZ-Ochoa admitted that he knew some of the other individuals operating funnel accounts, and that they conducted the same activity he did. RODRIGUEZ-Ochoa was released at the conclusion of the interview, and I believe that he promptly fled to Mexico and has not returned to the United States.

On October 17, 2016, agents conducted a covert trash pick-up outside the TARGET RESIDENCE, where FELIX-Bayardo and NUNEZ have resided since

---

[2] I believe that "William Gordo" refers to William QUINTERO. "Gordo" means "fat" in Spanish and William QUINTERO is approximately 5'6" tall and weighs approximately 300 pounds. I believe that "Cejas" refers to Mario NORIEGA-Osuna. When QUINTERO's phone was searched, there was a listed contact for "Joto Cejas" (Spanish for "Faggot Cejas") with phone number 619-831-7198. There was an incoming text message on February 19, 2016 from Joto Cejas that read "85 Martin wells." The same day, there were two cash deposits of $4250, for a total of $8500, made from locations in Florida into the Wells Fargo bank account of "Martin Gonzales-Cota," an alias of NORIEGA-Osuna. I therefore believe that the text message was NORIEGA-Osuna informing QUINTERO that 85 (hundred dollars) had been deposited into his Martin (Gonzales-Cota) account at Wells (Fargo). Agents also conducted a search of the Facebook social networking website and located a page associated with the account name "mariosinaloa9" and a profile name of "Mario Noriega (El Cejas)," with pictures of NORIEGA-Osuna.

approximately April 2016.[3] In the discarded trash, agents found 11 empty Wells Fargo envelopes with a hand-written name and corresponding number on each envelope, e.g., "Luis," "Miguel," "Daniel" and "7500," "5590," "7600." I believe that these envelopes were used to deliver currency from funnel account holders to FELIX-Bayardo and that the notations indicate the funnel account holder's name (or alias) and how much currency was being delivered.

From June 2015 to June 2017, there were deposits totaling approximately $101,630.80 into NUNEZ's MFCU ACCOUNT, including cash deposits of $59,587 and checks or money orders of $18,100 from the accounts of FELIX-Bayardo and several of his aliases. The withdrawals from the MFCU ACCOUNT were used for gambling, personal living expenses, water and utility bills, car insurance, a monthly rent payment of $2650 for NUNEZ and FELIX-Bayardo's residence at 3671 Royal Place, a monthly lease payment of $1260 for NUNEZ's 2016 Mercedes-Benz GLE 450, and car loan payments of $1002.75 for NUNEZ's 2015 Dodge Durango. Despite extensive surveillance, agents have not observed FELIX-Bayardo or NUNEZ going to work, conducting a legitimate business, or otherwise earning any legitimate income. FELIX-Bayardo is a citizen of Mexico without authorization to be present or work in the United States. While NUNEZ is citizen of the United States, she has no known employment and receives various public benefits including Medi-Cal (low-income healthcare program) and CalFresh (low-income food assistance). I therefore believe that FELIX-Bayardo transmits illicit funds to NUNEZ's MFCU ACCOUNT to be used to pay their joint household expenses. In addition, on at least six occasions, NUNEZ personally withdrew currency from funnel accounts operated by FELIX-Bayardo. For example, FELIX-Bayardo maintained Wells Fargo account # 8789652123 under the alias Saul Barragan-Soto. On January 4, 2017 NUNEZ's photo was taken at a drive-through ATM machine in Chula Vista, CA as she withdrew $300 from the Barragan-Soto account while driving the 2015 Dodge Durango.

---

[3] Prior to April 2016, FELIX-Bayardo and NUNEZ resided at 594 Race Point Ct., Chula Vista, CA 91911. Almost immediately following the arrests of William and Arami QUINTERO, FELIX-Bayardo and NUNEZ left 594 Race Point Ct. and moved to the TARGET RESIDENCE.



### E. Drug Distribution Conspiracy

On September 7, 2016, I observed FELIX-Bayardo near the TARGET RESIDENCE driving a black Infiniti sedan (CA 7JKB501) registered to NUNEZ with an unidentified male passenger. I followed the Infiniti to a rural area in Alpine, CA until it turned onto Rancho Sierra Road and into a large rural property. Because of the size of the property and the rural landscape, it is difficult to conduct effective surveillance of the specific activities occurring on the property. On September 21, 2016, agents again conducted surveillance outside the TARGET RESIDENCE and observed multiple vehicles parked outside, including a vehicle that had entered the United States from Mexico that morning. Agents observed three males leave the TARGET RESIDENCE and depart in the previously mentioned red Ford F-150 registered to NUNEZ. Agents tracked the vehicle to the same rural property in Alpine, CA, where they observed the occupants of the vehicle move objects near what appeared to be a non-residential structure, later identified as the TARGET BATHHOUSE. Agents researched San Diego County Recorder's property tax records and met with county employees who had inspected that property in 2014. Agents learned that the structure was a detached bathhouse that was adjacent to the residence located at 2804 S. Grade Rd., Alpine, CA 91901, specifically Assessor's Parcel Number 404-430-46-00.

[REDACTED]

self-storage facility in National City, CA. A review of Acropolis Space Center records revealed that two units were associated with FELIX-Bayardo: Unit 101118 and Unit 101119. Unit 101118 was rented under the name "Javier Felix-Loya," who had provided Mexican passport number G10935774 when renting the unit. The photograph on the passport depicted FELIX-Bayardo. "Felix-Loya" (an apparent alias of FELIX-Bayardo) had also signed an authorization allowing NORIEGA-Osuna to access the unit. Unit

[REDACTED]

      From February 24, 2017 through August 8, 2017, FELIX-Bayardo, ███, ███████████████████████ Manuel FELIX-Gutierrez, Hector SANDOVAL-Toloza, and other unidentified males have been observed in surveillance footage accessing Units 101118 and/or 101119 at Acropolis Space Center 22 or more times, in aggregate. During these trips, these individuals could be seen delivering and/or removing cardboard boxes, plastic containers, bags, and buckets to and from the units. For example, on June 12, 2017, FELIX-Bayardo and two other individuals accessed Unit 101119 and removed two boxes and a large bag. They then traveled to the TARGET BATHHOUSE.

      Most recently, FELIX-Gutierrez and SANDOVAL-Toloza delivered a black duffel bag to Unit 101118 on the afternoon of August 8, 2017. On the morning of August 9, 2017, agents executed a delayed notice search warrant on Units 101118 and 101119. Agents seized: (1) approximately 26.5 kilograms of a substance that field-tested positive for the properties of cocaine; (2) approximately 938 grams of a substance that field-tested positive for the properties of methamphetamine; (3) approximately 486 kilograms of a substance that field-tested positive for the properties of marijuana; and (4) multiple firearms including a .223 caliber fully automatic rifle, a .45 caliber revolver, two 9mm semi-automatic pistols, and a .45 caliber semi-automatic pistol. Approximately 18 kilograms of the suspected cocaine was found in a black duffel bag that matched the appearance of the bag that had been brought to the storage unit by FELIX-Gutierrez and SANDOVAL-Toloza one day earlier. Agents also observed and photographed original fraudulent Mexican identification documents that had been used to open funnel accounts previously identified in the investigation.

Below is an image of the items seized from units 101118 and 101119:



On August 12, 2017, FELIX-Bayardo, FELIX-Gutierrez, and SANDOVAL-Toloza returned to Acropolis Space Center and accessed the storage units (thereby presumably discovering that their drugs and firearms were missing).

### F. Conclusions

As a general matter, based on my training and experience, and consultation with other law enforcement officers experienced in drug investigations, I know that:

1. Individuals involved in drug trafficking often maintain the following items in their residences and vehicles: controlled substances and paraphernalia for packaging, weighing, cutting, testing, distributing and manufacturing controlled substances. They will commonly have these items on hand, secreted at their premises or on their person or in their vehicle. The selling of such contraband is an ongoing type of business, because it takes time to develop clientele and the business tends to be too lucrative to abandon.

2. Individuals involved in drug trafficking often maintain records of their transactions for months or years at a time. It is common, for example, for drug

traffickers to keep pay/owe sheets or other papers of drugs sold and monies owed. Such pay/owe sheets or papers are used as a basis for accounting and for settling existing debts. Such records are often maintained for a substantial period of time even after the debts are collected. Such records and pay/owe sheets also frequently include the names, identities and telephone numbers of suppliers, customers and co-conspirators.

3. Individuals involved in drug trafficking must often rely on others to obtain their drugs and to help them market the drugs. Frequently, traffickers maintain evidence of the identities of these co-conspirators at their residence and in their vehicles.

4. Individuals involved in drug trafficking commonly earn income in the form of cash and try to legitimize these profits. In order to do this, traffickers frequently attempt to transfer and conceal the money by means including, but not limited to: placing assets in names other than their own to avoid detection while maintaining control; laundering the money through what appears to be legitimate business or businesses; hiding money in their homes, safes and safe deposit boxes; or using the money to buy assets which are difficult to trace. Records of these and other types of transactions are often found at the residences of individuals involved in drug trafficking.

5. Individuals involved in drug trafficking often keep and maintain large amounts of United States currency at their residences and in their vehicles. Such funds are often used for every-day expenditures and to maintain and finance their ongoing drug business.

6. Additionally, individuals involved in drug trafficking often amass and maintain assets and valuables, such as jewelry, at their residence that were generated by their trafficking activities, or purchased with the cash earned from such trafficking.

7. Individuals involved in drug trafficking often maintain weapons, firearms and ammunition on their person or in their residence and/or vehicles. Such items can be used as an instrumentality of the crime of possession and distribution of drugs. I am aware of instances in which traffickers have maintained such items in their residences and vehicles in order to protect themselves and guard their drugs and profits, as well as for enforcement purposes during their drug dealings.

8. Residences and premises used by individuals involved in drug trafficking usually contain articles of personal property evidencing the identity of person(s) occupying, possessing, residing in, owning, frequenting or controlling the residence and premises.

9. Individuals involved in drug trafficking frequently communicate with co-conspirators by means of cellular telephones, and usually maintain them on their person and/or in their residences and vehicles. In this case, FELIX-Bayardo has provided multiple e-mail addresses when opening funnel accounts, and therefore also likely has computers, tablets, or other internet-capable electronic devices at his residence.

For the reasons above, I believe that FELIX-Bayardo is engaged in a conspiracy with ▮▮▮▮▮▮▮▮ NUNEZ, and NORIEGA-Osuna, among others, to launder money through the operation of funnel accounts, bulk cash smuggling, and other means. I further believe that FELIX-Bayardo is engaged in the distribution of controlled substances throughout the United States and has conspired with Manuel FELIX-Gutierrez, Hector SANDOVAL-Toloza, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ among others, to do so.

I believe that the TARGET RESIDENCE is the present home of FELIX-Bayardo and NUNEZ. As recently as August 2017, both FELIX-Bayardo and NUNEZ have been observed at the TARGET RESIDENCE frequently. Vehicles registered to NUNEZ have been seen parked near the TARGET RESIDENCE in the morning and at night. Based on my training and experience, and given FELIX-Bayardo's active and recent involvement in drug trafficking and money laundering described above, I believe that the items in Attachment B-1 are likely to be found in FELIX-Bayardo's current residence.

Given the conspirators' travel to the TARGET BATHHOUSE, particularly FELIX-Bayardo's travel on June 12, 2017 from storage units where drugs were seized to the TARGET BATHHOUSE, I believe that the TARGET BATHHOUSE is being used by the FELIX-Bayardo drug distribution conspiracy as a transshipment point for drugs. Because multiple firearms were stored in close proximity to the drugs at the storage

units, I believe it is likely that there may also be firearms, ammunition, or other weapons at the TARGET BATHHOUSE as well. I therefore believe the items in Attachment B-2 are likely to be found at the TARGET BATHHOUSE.

I believe that the TARGET MAILBOX belongs to FELIX-Bayardo and is used to receive mail and packages related to the ongoing drug distribution and money laundering conspiracies, and is therefore likely to contain the items listed in Attachment B-3.

I believe that the BOA ACCOUNT is funnel account controlled by FELIX-Bayardo that has recently been used to transmit drug proceeds from lower-level distributors back to FELIX-Bayardo. I believe it is the only identified funnel account with a current balance, and therefore contains funds subject to forfeiture pursuant to 18 U.S.C. § 982(a) and 21 U.S.C. §§ 853(a) and 881(a)(6).

I believe that the MFCU ACCOUNT is funded through cash deposits, checks, money orders, and transfers from FELIX-Bayardo's funnel accounts and other proceeds of drug distribution, and therefore contains funds subject to forfeiture pursuant to 18 U.S.C. § 982(a) and 21 U.S.C. §§ 853(a) and 881(a)(6).